Jennifer Katz, Assistant Attorney General, Council Table The District Court erred when it denied the Department's motion to dismiss the state law claims of employment discrimination because the state has not waived its 11th Amendment immunity from suit in federal court. Rather, when the state created a private right of action for employment discrimination, the state waived sovereign immunity solely as to those claims brought in state court. As set forth in Supreme Court precedent, there is a stringent test that is applied to determine whether a state has waived its 11th Amendment immunity. Under that test, the state must expressly consent to suit in federal court. As this Court last term in Allen v. Cooper reiterated, a clear statement is required to effect a waiver. Here, that expressed consent is absent. The sovereign immunity waiver at sovereign immunity as a defense against an award in an employment discrimination case under Title 20. There is no expressed consent to suit in federal court in that provision as the plain text demonstrates. Moreover, the waiver is limited to cases under Title 20. Title 20 contains a venue provision establishing that cases must be brought in the Circuit Court for the county where the alleged unlawful employment practice occurred. And that's found also in Title 20 of the state government article. The venue provision provides persuasive textual evidence as to the... So tell me, we apply, I guess, the federal procedure law, and then we come to the conclusion, if we follow your track of thinking, that under the Supreme Court stringent test, this immunity has not been waived, what if the Maryland Court of Appeals has law on analogous cases that would point otherwise in the interpretation of the statute? Well, the Court of Appeals has not interpreted the statute. But take my hypothetical for what it is. What if that's the case? If the Maryland Court of Appeals, let's say the first hypothetical, I'm not saying this is the law, squarely says, yes, we have under the statute. But if we employ the stringent test, we come out null. How do we handle a case like that? Well, there was such a case not involving this provision but involving a different one. Just that question. Do we look to that case at all, or do we ignore... Yes, Your Honor. We do ignore... No, you would look to that case. We would. You would look to that case for the question of the state's interpretation of its statute. But you would apply the federal principles still apply, so there would have to be some assurance that the state had applied the federal rules. Don't take that too fast, because I want to make sure I understand what you mean by the federal principle being the Supreme Court's stringent test. Correct. We've determined, okay, under that test, there's no indication that immunity has been waived. But my hypothetical says there's case law in the Maryland Court of Appeals, hypothetically, that says otherwise. If there were... Do we even look at that case law? Yes, if the state had interpreted the provision at issue. So, in other words, in Lee-Thomas, the case in this Court, the state court of appeals had interpreted a waiver of sovereign immunity that was different, very different from... You're saying Lee-Thomas was distinguishable because of that? Yes. The language is different. It has to be, doesn't it? It absolutely is, Your Honor. The language is different in that case. You've got me on both sides of this thing, otherwise. I was on the Lee-Thomas case, and then I was on Allen v. Cooper. Yes, I understand that, Your Honor. And in that case, the state court of appeals, the highest court of the state of Maryland, had interpreted a different state sovereign immunity provision, a waiver provision that waived immunity as to county boards of education to any claim, at that time, less than $100,000 or less. And in the Maryland court of appeals case, which was Zimmer Rupert, the court of appeals applying the federal law for a waiver of 11th Amendment immunity determined that any was synonymous with all. Looked at the language, looked at the legislative history, looked at the absence of any limiting language and determined that that was sufficient, that no other reasonable construction could be had that was sufficient to waive 11th Amendment immunity. What about the Zimmer Rupert case from the court of appeals? Yes, that's the case I'm describing. So in that case, the sovereign immunity waiver provision was for county boards of education. So you're looking at the venue aspect of that case? No, in that case, there was no venue provision. In Zimmer Rupert, it was simply a waiver provision, a waiver of state sovereign immunity for county boards of education as to any claim of $100,000 or less. There was no venue provision. Well, I'm looking specifically at the language in that case, and it says something to the effect, you may not raise the defense of sovereign immunity in a claim. It says that's tantamount to a waiver for a federal court. Comparing that with the language in this statute that says may not raise sovereign immunity as a defense against an award, it looks analogous to me that the holding in the Zimmer Rupert case insofar as the reach of that language to allow a waiver in federal court would be similar to what is here with the same kind of general language in this statute here that says may not raise sovereign immunity as a defense against an award. Well, Your Honor, the operative word in Zimmer Rupert that the court really hinged its decision on was any, and any being synonymous with all. And the court looked to the legislative history regarding the requirement that county boards of education. So you think that distinguishes that in that little language there was the any claim as opposed to just saying may not raise as a defense against an award? No, what I'm looking at. Do you think that's different? Well, what's different is that. Because they didn't use any award? The full language of the sovereign immunity waiver provision that's at issue here is that the state may not raise sovereign immunity as an award in an employment discrimination case under this title. So that's what distinguishes this case from Zimmer Rupert. There you had any claim, waive sovereign immunity. Here you have employment discrimination case under this title. And when you look at, and it's a rule of Maryland statutory interpretation, when you have relevant statutory provisions that are part of the same statutory scheme, they must be considered in interpreting the plain text. What does the legislative history say that an award means? Is that similar to any award? Well, in the legislative history, they talk about any award. But it's important to think about the context of that provision, why that language was changed from a salary award to an award. And the reason is because the sovereign immunity waiver provision was first enacted when Maryland had only administrative remedies for employment discrimination claims. And when the private right of action was created, it was very clear in the legislative history that that was intended to open the state's courthouse doors for victims of employment discrimination for whom filing suit in federal court was inconvenient or too expensive. And so it was to open the state's courthouse doors. The legislative history is quite clear as to that point. And when the sovereign immunity waiver provision was brought in to encompass awards in the private right of action, not just limited to administrative decisions, that's when the language was changed to an award. But it was still limited to cases under this title. And under this title, you have to look under the Maryland Rules of Statutory Interpretation, this court must look to the venue provision that's encompassed within the private right of action. And that venue provision requires the cases be brought in the circuit court of the county where the Employment Discrimination Act occurred, those being the general trial courts of jurisdiction in the state of Maryland. And under Feeney, the Supreme Court has articulated that venue provisions provide persuasive textual evidence as to the scope of a statutory immunity waiver, which must be construed strictly in favor of the sovereign under both federal and state law. What if there was no venue provision here? Even if there were no venue provision, the state would argue that this only waived immunity in state court because there is not the any claim language that was at issue in Zimmer Rupert. Here we have a sovereign immunity waiver provision that's limited to an award in a case under this title. And that just lacks the express language that this court has required, set forth last term in Allen v. Cooper, that the Supreme Court requires. And that's because there would be another reasonable construction that could be given. There would not be an overwhelming implication because the words any claim are not included. Well, do you think that the – what do you call Lewis Lee Thomas? All these cases have hyphenated names. It's all too much for me. But is it limited to cases, to statutes that say any claim? Well, it's really limited. In the state's view. In the state's view, it's limited to that particular sovereign immunity waiver provision. And then there would be – you would have to look at other evidence in the – if there's other persuasive textual evidence in the statute to limit the statutory immunity waiver provision. But even so – excuse me, the sovereign immunity waiver provision. What other evidence would there be besides the venue provision? Well, there could be legislative history. There could be – Legislative history is pretty – at least back in the day, pretty rare in Maryland. Now there's full legislative history like federal legislative history? Well, there are – there is a fair amount of legislative history. In this case, you have the lead sponsor of the legislation explaining that the reason for enacting the private right of action was to open the state's courthouse doors. In other words, there is no indication. And there's no pushback from the Maryland Court of Appeals, as there sometimes is in the Supreme Court, about not looking at legislative history? No. One can take into account the legislative history in Maryland's statutory interpretation. But the limiting language in this statute is the venue provision. And as the Supreme Court made clear in Feeney, that is persuasive textual evidence as to the scope of the sovereign immunity waiver. And in this case, it limits the waiver of the sovereign immunity to state court. And two other circuits, the Ninth Circuit and the Fifth Circuit, have relied on similar venue provisions to hold that a more general consent-to-suit provision did not waive 11th Amendment immunity. And that was the Ninth Circuit in McCominoco v. State of Washington, 45 F. 3rd, 316. And the Fifth Circuit in Martinez v. Texas Department of Criminal Justice, that's at 300 F. 3rd, 567. Both of the cases are in the brief. And in the Ninth Circuit case, the State of Washington was enacting a state-level Jones Act type of cause of action for injuries to seamen on state-owned vessels. And even though the Jones Act has a broader venue provision, which allows suit to be brought in the United States District Courts, that State statute sort of adopting the Jones Act, the venue provision was limited to State courts. And the Ninth Circuit held that that was enough to limit the waiver of sovereign immunity to State court only. Sotomayor, can I ask you, the district judge, Judge Grimm, suggested that he might, in fact, reverse himself if the State dismissed its appeal. Can you give me some sort of background on why the State wouldn't then dismiss its appeal? I don't want you to breach attorney-client privilege. It's in the best interest of the Department and the best interest of the State to have a ruling from this court, because even if Judge Grimm were to have reconsidered the decision below, there would still be these other conflicting decisions in the district court that would muddy the waters as to the state of the law. You'd have a lot of district court opinions going. They're all against you. Yes, in this case. So you want us to straighten it out for you. But the Allen v. Cooper, that was what convinced him he might have a problem with it. That's correct. Well, the other judges would have picked up on that probably. And that's certainly a possibility. But we thought the best course of action is to have a decision by this court that would be controlling over the lower district courts. You're asking us to give you an advisory opinion or something. Well, no, there is a final decision as to the 11th Amendment immunity issue from the district court. And the letter order from Judge Grimm was not, if I had jurisdiction, I would change my view. It was, you know, maybe you've got a better argument than I thought. But that remains to be seen. And, you know, just to touch briefly on the rationale that Judge Grimm, borrowing from another district court judge, had articulated in this case, he really finds by implication and ambiguous language that there's a waiver, which this court said in Madison v. Virginia, was not proper. How many decisions do you have in Maryland that go the wrong way? You have a decision from Judge Hollander of the district court, I think, back in 2013. And then that, her analysis sort of gets parroted by other federal district court judges when they're making a decision on this issue. There hasn't been a robust rethinking of the issue. Correct. The rest of them are consistent with that. That's correct, Your Honor. But, again, that decision, if we're going back to- Predated some of this other law. It did. Well, it predated the decision in Allen v. Cooper, to be sure. But the basis on which they relied, I can discuss in my rebuttal time, which I have reserved, relies on implication, which is not a proper basis to find a waiver of 11th Amendment immunity. Thank you. Good morning. Good morning, Your Honors. May it please the Court, I'm Susan Kruger, and I'm here on behalf of the appellee, Michael Pence. So I want to go back to, first, to the discussion of venue. And I see the venue provision here really as a red herring. There was a case, Port Authority v. Feeney, and in that case where the U.S. Supreme Court looked at venue, it was a very different kind of statute. So, in other words, the first part said, The state's consent to suits, actions, or proceedings of any form or nature at law, in equity or otherwise, against the Port Authority. And then it went on to say, The foregoing consent is granted upon the condition that venue in any suit, action, or proceeding against the Port Authority shall be laid within a county or a judicial district established by one of said states or by the United States and situated wholly or partially within the Port of New York District. So this is a different kind of statute than what we have here. Here we have a statute that says, In 20-903, the state, its officers, and its units may not raise sovereign immunity as defense against an award in an employment discrimination case under this title. And then, in a wholly different section, we have a provision that says, A civil action under this section shall be filed in the circuit court for the county where the alleged unlawful practice occurred. Now, this can't mean that the only place that you can file a suit under Maryland's Fair Employment Practices Act is in the circuit court in Maryland. Why not? Because, well... Are you saying this venue provision cannot mean what it says? Well, I mean, what it means is that if you're filing a lawsuit in Maryland, then you need to file it in the circuit court in the county where this unlawful practice occurred. That's exactly what it says. Right. It's not saying that you can't also file it in federal court if you've got a case that has federal court claims. So... Wasn't that the problem in the Phoenix case? I mean, when you looked at the venue of it, it says in the county, Travis County, and the problem was it didn't give you anywhere else. Well, my understanding of Phoenix was that there, the venue provision actually clarified, okay, this is the consent to be sued, okay, could only occur if this suit is brought in these certain places. And here you don't have language that says the consent is only, like we're only agreeing to be sued in the circuit court. So the way we look at this is that the Maryland legislature used language that was not ambiguous, and also the Maryland legislature knows how to limit itself if it wants to. And so, for example, in the Tort Claims Act, it says in accord of the state. So it says the immunity of the state and of its units is waived as to a tort action in accord of the state. Okay. And then also in contract actions. The state, its officers, and its units may not raise the defense of sovereign immunity in a contract action in accord of the state. So, clearly, the Maryland legislature knows how to limit its sovereign immunity. It didn't do so in this case. And I think you can look at Zimmer-Rubert, albeit a different statute, but if you look at the analysis there, the Zimmer-Rubert case… There's no venue provision in that statute, right? I don't think so. But I don't think that's… Again, I would put aside the venue. If we could put aside venue for now… The Supreme Court seemed to think that was really important. That's why it's difficult to put it aside. Right. But that was in a case where it actually was different language entirely. Well, unfortunately, the Supreme Court, whatever they say, even if they're addressing different language, controls us. But for the purposes of your argument now, let's… Okay. We'll leave this on. I don't understand the structure of where you're going with your argument. My understanding is we have to look at the federal procedural law. The Supreme Court has set out as many stringent tests. The language I gave you came from Martinez's case out of Texas, that connected venue. And the first question is, is there language in there in which the statute has said, okay, we'll be sued by the fellow government? And if it's not, which we probably all can agree, there's nothing in this language that says that Maryland agrees to be sued in federal court, then if any case with the Martinez case then said, well, then look at what the venue is. If the venue allows it to be in a different court like one of the cases in the United States District Court, well, we know that's federal. That's good. And that means you waived it. So this case is similar to that. And when we apply that stringent test, I mean, it comes out bad for you. Now you want to go to the Zimmer-Rupert case, which goes to my question earlier, is having made that determination that under the federal procedure with the stringent test of the Supreme Court, what do we do if the Court of Appeals of Maryland has ruled differently? And counsel on the other side seemed to indicate you've got to look at that. But the question here is, has Maryland Court of Appeals spoken with some degree of certainty on this issue that we can now say, well, we know what the statute now means? Well, and I think so because in Zimmer-Rupert, the Court of Appeals said the legislature knows how to limit itself. She said the difference there, as I understand it, was that case used any award, and this one used and. And that's a distinction. An award concerning a certain. And that's correct. It's distinguishable. But all of these various statutes are distinguishable. Some of these, I mean, even like a Tescadero, suits may be brought against the state in such manner and in such courses shall be directed by law. I mean, that's very big. When you say it's distinguishable, are you saying it's distinguishable such that we ought not consider that case to determine whether federal jurisdiction, the federal courts should be involved? No, I think. No, Your Honor, I think that. I know it's distinguishable using and and any. That's not my point. But I don't think that I still think you can use the language of Zimmer-Rupert and apply it to this case because I don't. I think that likes the Zimmer-Rupert case. This language that we have. The state may not raise sovereign immunity as a defense against an award in an employment discrimination case under this title. I mean, it's basically saying you can't do it. You can't raise sovereign immunity as a defense. It's very clear. And here it says a county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less. They could have said to a claim. But I don't think that that's I don't think that's distinguished what you what you should be looking at as the distinguishing characteristic. I think what you should look at is the fact that the Zimmer-Rupert case said, look, our legislature knows how to limit itself. It could have used limiting language and it didn't. And then. Well, we can accept that. Maryland knows how to limit itself. But the United States Supreme Court has limited us to finding waivers only where there is a specific state intent to be sued in federal court. I mean, yeah, Maryland knows how to do it. But we can't say we can't say, well, they should have done it by implication. I don't think we can do it by implication. I think we've got to find a specific intent by the court. And that's why if you were using the Zimmer case, if I thought your argument was going to go to say that's a statement that that the Maryland Court of Appeals has indicated a specific intent to allow for the waiver in this instance to to be sued in federal court. That that's correct. I realize it's not the same statute, but but I believe you can you can use the language is what I'm talking about. It's the analogous language that's being used in of the statute. That's what's important. I think I think the language in the Zimmer Rupert statute is analogous to the language that we have in the FIPA statute. So that's what we got into the end. Right. But you said it's distinguishable. I don't think you can make. I don't I don't think you should. I don't think that the difference between Anne and any should change the result. And I don't think that. To me, in my reading of Zimmer Rupert, it goes more to the fact that the legislature knew how to preserve its 11th Amendment protection. But going back to to Judge Wynn's question, which I think was a good way to frame it. So we're looking to see what the state court would say about this, because there's your colleague on the other side. Acknowledge that state Supreme Court Court of Appeals in this case knows whether the state has waived immunity or not. But when the state court is making that determination, it also is looking at what the Supreme Court says you need to do. The Supreme Court put a lot of weight on that venue provision. So whatever else you're talking about, about the wording of these two statutes, is it reasonable to think that the state of Maryland, the highest court of the state of Maryland, would think that when you have a venue provision like this, you nonetheless we can stretch this language into saying there is no waiver of there is a waiver of sovereign immunity. And it seems to me you have a pretty hard road to hoe there. Do you understand what I, because it was a complicated question. I apologize for that. And I understand what you're what you're getting at. Because you would acknowledge that the court, I mean, sometimes Court of Appeals doesn't follow the Supreme Court law. The Supreme Court tells them that, but that's what they're supposed to be doing just as we are doing that. Right. But I also see a difference in the venue provision at issue in Feeney. Well, they're different words, but they're both venue provisions. And that's what the Supreme Court found very telling. A telling bit of whether or not there was going to be a waiver of immunity. But again, it wasn't a venue provision that was just sort of out there. It was a venue provision connected to the actual sovereign immunity part of the statute. Basically saying that we're, you know, if the foregoing consent is granted upon the condition. So we don't have the venue provision in the FIPA statute doesn't say the foregoing consent is granted upon the provision that suit is only brought in circuit court. Well, let me ask you this. Have you found any case law in which a federal court has said, well, we have a venue provision here. But it's not like the venue provision that was talked about the Supreme Court in these waiver of 11th Amendment immunity cases. And therefore, we're going to be interpreting it differently and not saying it is an indication of waiver or not of 11th Amendment immunity. Because I haven't found one. No. So I don't think that argument is very compelling. The difference in the two venue provisions. OK. Well, in any event, even this court or the Fourth Circuit stated in the Lee Thomas case that. It was reluctant to infer that the only way a state statute can satisfy the stringent test in a Tescadero is to include the words federal court or U.S. And so, you know, again, I think, you know, basically the way the way I look at this is that we have a we have the Zimmer Rupert decision. Which interprets a different statute, but yet says, look, there's no limiting language here. And and says, you know, legislature, they could have limited it if they wanted to. And they didn't. We have Lee Thomas saying you've got to go by what the state's highest court says when they interpret the Tescadero stringent test. And and I and I believe that gets to the conclusion. I think what you're going to is that Maryland courts don't have to follow the Supreme Court test because the ultimate test is a question of state law and the intent of state law. And the Maryland Court of Appeals tells you what the state law is in Maryland. And when you go to the Zimmerman case, there is some language that might be helpful to you. But I'm a question comes to my mind. Why? Why wouldn't it be beneficial for you to say to the court? Why don't you certify this issue to this Maryland Court of Appeals? Let's see what state law is on what state intent as the highest court there going back and forth and around. I'm not sure I'm following you on that. But that's my take on it could be my colleagues feel differently. But would you favor certification here? I mean, I guess that would resolve the issue. That's not exactly a rousing. Well, let's let's make sure we're clear. If you use this stringent Supreme Court case. Your argument is very difficult. And so then you need to look at the state specific state intent and the Maryland Court of Appeals case that Zimmerman case has it. But you've got that little language in there. That's a little different than here. But it could go one way or the other. But maybe we're not willing to say what Maryland would do, which we are permitted to do. But, you know, we don't want to do that. We want to know what Maryland would be a little more solid on it. So why would you be so weak on this certification is what I'm trying to understand. You have federal claims. Right. There's other federal claims in the case. And they're still alive. Right. Yes. Maybe that's why. You still say there's no jurisdiction on appeal. It's a it's a difficult argument. You know, if there's in Gray Hopkins versus PG County, there was some language in that case which made us believe that there may not be jurisdiction. And so, you know, basically, under Maryland law, sovereign immunity is actually immunity from liability only not immunity from suit. And Gray Hopkins said that the Fourth Circuit has jurisdiction over interlocutory appeals. If under state law, the immunity is an immunity from suit as opposed to an immunity from liability only. So because of that language, there was that question. And that's why we raised the jurisdiction issue. And also, just to clarify this, the. The Gray Hopkins case actually said that sovereign immunity of the state of Maryland is an immunity, is actually an immunity from suit, but they were citing a Maryland case which later was overruled. So and that's explained. There are. It seems to me we deal with loads of 11th Amendment immunity claims by states. And so we were without jurisdiction to resolve all of those. So. But one thing I saw was that in Gray Hopkins, it was. It actually that the decision was divided between the federal claims and the state claims. And so like Gray Hopkins, we have pendant state law claims here. That's what we're talking about. And it seems to me that was the distinction. Gray Hopkins is versus Prince George's County. That's not the state of Maryland, right? So we have an 11th Amendment in the state. Only a state has 11th Amendment immunity. Counties can have various other kinds of and do. Right. Right. I think that's right. Maybe you think that's wrong. You think that the county has 11th Amendment immunity? No. So. So. So I think I just thought that it was the difference was between analyzing pendant state claims and analyzing federal claims. And because there were there was a pendant state claim in this case that that's why we could question the jurisdiction. Thank you. Thank you. Briefly, your honors. Issues of 11th Amendment immunity waiver are federal law issues. It is an issue of federal law. What this court stated in Lee Thomas was that courts must apply federal law as embodied in the Supreme Court precedent. But when a state's highest court has applied federal law and determined that a state statute affects the waiver, then this court must accord some deference to that decision. We do not have a court of appeals decision holding that this immunity provision, that this waiver provision waived 11th Amendment. What if we did? That was Judge Wynn's original question. And if you did, then you would accord deference to that. State court had applied the correct federal principles that the state statute, the way that the state highest court interprets its statute would guide this court. But only if the court of appeals had properly applied the federal principles at issue. It's a it's an issue of federal law, whether a state has waived 11th Amendment immunity. We're talking federal procedural. We're talking federal procedural. This is the way I see this. Maybe you can correct me. But when we get to the question of whether a state has decided to waive its jurisdiction to allow the federal government, that's state law. And if it's state law, the state highest court determines it. If it hasn't been determined, then the Supreme Court tells us that then you apply the stringent test. And as a result of that, then it comes out. But the state law has spoken to it. No words at the Maryland Court of Appeals has spoken to this and says this statute says this. Do you maintain we then go look at what the Supreme Court says in Phoenix? Yes, Your Honor. If the state has not. You didn't hear my question. No, I did. I'm your honor. Allow me to finish this question, please. OK, we will talk together and we're in discussion. There's a lot of excitement. Well, I want to get the question because I'm trying to understand what you're saying, except what I said. That is, if the Maryland Court of Appeals has ruled definitively, this is it. You don't look at what the Supreme Court tells you on how to determine federal jurisdiction. Is that correct? That's correct. But in Lee Thomas, this court did assure itself that the Court of Appeals of Maryland had faithfully applied the federal court standards to the issue of whether the state had waived 11th Amendment immunity. It is still a federal question. OK, but I think what we're trying to get at is assume, you know, you're assuming that you're right. So assume that the Maryland Court of Appeals made a mistake on this exact case and said that there was a waiver of sovereign immunity. And then it comes to us that there's some prior case that holds that. And then you're here today. This court, as it did in Lee Thomas, accords some deference, but it still does assure itself that the stringent test has been met here. And I think this is a little academic because there is no court of appeals. No, we understand. And the issue is that the language that the Court of Appeals based its decision on any claim with no limiting language anywhere else in that statute. Was synonymous then with all claims, which included claims brought in federal or state court. Here, we don't have that. We don't have the word any. We don't have the word all. We have the waiver of sovereign immunity as a defense in an award in a employment discrimination case brought under this title. And that language, employment discrimination case, if you look at the private right of action, the venue provision also refers specifically to employment discrimination cases. Are you saying to me that Maryland must follow the stringent test from the Supreme Court? Yes, Your Honor. So you are saying that a federal interpretation of a state statute, the state is bound by? No, Your Honor. That's exactly what you're saying. That's exactly. Listen to me. That's exactly what you're saying. With all respect, Your Honor. You are saying that the stringent test and how to determine whether a state has waived its immunity is determined by the United States Supreme Court. But but and that means that the state has to yield to that interpretation of his statute. No, Your Honor. No, but I want to understand your reason. What I'm saying is that the state interprets its statutory language, interprets whether the General Assembly has waived 11th Amendment immunity, uses principles of statutory construction under Maryland law, but answers in doing that, answers the stringent test set forth by the Supreme Court, applies those principles. Well, that would remain to be seen if that comes out that way. Thank you. Well, can I just look at Zimmer Rupert and that's what the Maryland Court of Appeals said. But I go back to the question that I'm trying to and I'm just not sure I understand the state's answer to this. Suppose, as I say, that we had an earlier opinion from the Maryland Court of Appeals was wrong, in your view. It said that there, in fact, was a waiver of sovereign immunity in this statute with all of that. And then this case came to us. So we are now looking at Supreme Court law and arguably for your purposes here, thinking that you should prevail. But we have a Maryland Court of Appeals opinion telling us, no, this is a waiver under Maryland law. So what do we do? I think you have to do what the court did in Lee-Thomas, which is that the court looked, gave deference to the state court of appeals decision as to what that state statute, what immunity that state statute waived. What's the answer to the question? Yes. Yes. I mean, you would do what the court did in Lee-Thomas. You would give deference to the state court decision. What does deference mean, I guess, is what we're asking. Does deference mean we talk about it in the opinion but distinguish it? Because it's not going to be distinguishable under my hypothetical. Right. It's just going to be that the state thinks, the state attorney general's office thinks that the Maryland Court of Appeals was wrong. My apologies. And the Supreme Court didn't take cert, and here we are. I didn't make myself clear, Your Honor. My apologies. I'm sorry. They would defer to what the state court had done and say that there was a waiver of 11th Amendment immunity. We would have to do that. Well, yes, but in Lee-Thomas, in all fairness to the state, I mean, in Lee-Thomas, the court did assure itself that the state had applied the right test. And so, and given that it had, the court had no reason not to. But this goes to the question of whether we should certify this. Do you understand? I understand. The only reason that this court and Lee-Thomas looked to what the Court of Appeals of Maryland did was because the Maryland Court of Appeals had reason to have already interpreted that statutory provision. Here, there has been no reason. There really wouldn't be a reason why this question would ever come to the Maryland Court of Appeals because it would be Dealing with a federal Dealing with federal claims in state court. So that's why. And this court does this all the time. This court looks at language that a state general assembly or legislature has enacted regarding sovereign immunity waiver or a consent to suit provision with a venue provision and makes these decisions without certifying the language to the state's highest court. It was only in Lee-Thomas because it had just happened to be that the state had raised the defense of 11th Amendment immunity in state court. The Court of Appeals ruled definitively on the issue. And that was why this court deferred to that decision. It wasn't because, as a first matter of general principles, this court looks to the state court to see what it would do with this provision. Under all of the cases that we cited that deal with state statutes of immunity I'm sorry, I know I'm far over my time. This court is starting with the stringent test set forth by the Supreme Court following its own precedent, Supreme Court and Fourth Circuit precedent, in determining whether there's been a waiver. The general principle that we've sought to elucidate here, at least I'm trying to understand, is to understand you have Lee-Thomas, which is a Fourth Circuit case. You have the Supreme Court case. All well and good. But under the Constitution, in terms of state sovereignty, the highest court in the state tells you what state law is. I don't know if Lee-Thomas or any other Supreme Court can do any different than that. But I accept the fact that you have a different opinion. Well, this court doesn't certify these questions to state courts. It's an issue of federal law. That was more of a general principle. The certification aspect of it is a determination that if we think that Maryland's court can give us some answer, the definitive answer, once that definitive answer is to what state law is, there are a number of cases out right now. Read the Pennsylvania gerrymandering case. It will tell you. When the state says it's the law for the state, under the highest court there, it's going to be the law, and the U.S. Supreme Court is not going to change it unless it offends federal principles. And there's nothing here that deals with federal principles. This is a question of whether does the state allow itself to be sued. That's the only question here. And a state can do it or a state can choose not to do it. It has nothing to do with federal law. It is a question of federal law, Your Honor. That's been stated in many, many cases as to whether a state has waived its 11th Amendment. We are addressing two different things, but I accept where you're going. And can I just ask you, going back to certification, have you found cases in which federal courts have certified this kind of issue? I did not see any such cases. All of the cases that I saw were federal courts looking at state statutes, interpreting, applying the stringent test set forth in Atascadero, and ruling without any guidance from the state courts as to whether the state had waived its 11th Amendment immunity or not. Every single case I believe that's in the brief follows that exact pattern. The only one that's different is Lee Thomas, because in that case it had just so happened that the state had raised an 11th immunity defense in a case in state court and the state court rejected it. That's the only reason that Lee Thomas had reason or opportunity to rely on what the state court had said in that case. In every other case, that is not what happens. It is a federal court applying federal law to a state statute. More questions? Thank you very much. We will come down and say hello to the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, Robert B. King, James A. Wynn Jr.